UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 2:24-00002 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| PAUL FAYE, SR. | ) | |

<u>PAUL FAYE'S STATEMENT REGARDING § 3553(a) FACTORS</u>

  Paul Faye, through counsel, respectfully submits that a sentence of time served, which equates to about a 13-month sentence, with good time credit, is sufficient to comply with the statutory purposes of sentencing. Mr. Faye, who has no prior criminal record, has been incarcerated on this offense since February 5, 2023. The advisory guideline range calculated in the Presentence Report ("PSR"), which is 37-46 months, is excessive under all the facts and circumstances of this case. Mr. Faye is 55 years of age, has poor physical health, suffers from treatable mental health issues, and is a first offender. He has been deterred by his arrest and incarceration and does not pose a threat to reoffend, particularly with the assistance of mental health and drug treatment during a period of supervised release or probation.

  Like many other Americans, Mr. Faye, who is very patriotic and loves his country, became more and more concerned over the last several years about the immigration crisis at the United States/Mexico border. Prior to the offenses, Mr. Faye spent a great deal of time on social media and the internet and was heavily influenced by news sources referring to the crisis as an "invasion" or hostile

takeover of this country. Based on his consumption of certain media and websites, he feared that terrorists, communists, jihadists, and foreign agents were invading the United States, and these views were echoed and reinforced by politicians and others in the media.

The government became worried about Mr. Faye's activities after two individuals, Brian Perry and Jonathan O'Dell, were arrested in October 2022 in Missouri for their plan to attack the border. (PSR at ¶ 10.) It appears that these two individuals are dangerous criminals and fully intended to fight at the United States/Mexico border, but Mr. Faye never took any actions with them. When agents attempted to arrest Brian Perry, he engaged in a shootout with federal agents. Perry and O'Dell went to trial in November of this year and were convicted of numerous felonies including conspiracy and attempt to murder federal officers. *United States v. Brian Perry*, No. 2:22-cr-04065, Doc. Nos. 148, 149.)

The government discovered that Mr. Faye had communications with Perry and O'Dell after they were arrested in October of 2022. (PSR at ¶ 10.) After discovering Faye's communications with Perry, the government began investigating with Mr. Faye in Marh of 2023. (*Id.* at ¶ 11.) Mr. Faye communicated intermittently via TikTok, phone calls, and text messaging with undercover agents, and continued to discuss the immigration crisis and plans to go to the border and resist the invasion. (*Id.*) Undercover agents met with him in person on April 1, 2023, and he discussed his beliefs with them. (*Id.* at ¶ 12.) Then, in December 2023, Mr. Faye met with an undercover agent shortly after being hospitalized by his family for mental

2

health issues and strange behavior, including talking to himself, talking about going to war, and saluting trees. At the December 2023 meeting with the undercover agent, he talked about a plan to go to the border to fight an illegal invasion. (*Id.* at ¶ 14.)

The government has characterized his discussions with the agent as a plan to shoot or bomb immigrants or border agents. However, Mr. Faye does not agree with that characterization and states that he would never shoot or bomb civilians or law enforcement agents. During his conversation with the undercover agent posing as a like-minded individual, Mr. Faye made numerous false and delusional claims, including claims that he is a sniper and served in the military in numerous conflicts in other countries. None of this was true, and Mr. Faye doesn't recall making the statements. The reality is that Paul Faye lacked the ability to fight as a soldier, given his age, physical limitations and his mental condition. Mr. Faye recognizes that some of his social media postings and his communications with the undercover agents in this case were delusional, and he recognizes that he needs mental health treatment.

Mr. Faye has always been a peaceful man. To his credit, despite some of his delusional bragging about being a soldier and false statements to law enforcement, he never took any violent actions in this case, and he assures this Court that he will never commit an act of violence in the future.

Mr. Faye has been harshly punished by his time at the Warren County Jail for the last 10 months and 14 days (as of the date of sentencing.) He suffers from

3

anxiety, and he has much unspent energy being cooped up in jail. Time is jail is extremely difficult for him, and he has learned a harsh lesson. He assures this Court that he never wants to break the law or go back to jail ever again. He vows to this Court that, whenever he is released in this case, he will be a model releasee and strictly comply with all conditions of his release, including mental health and drug treatment.

This Court's duty is to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing at 18 U.S.C. § 3553(a)(2). This is an important and difficult duty was set forth in *United States v. Sabillon-Umana,* 772 F.3d 1328, by Justice Gorsuch when he served on the Tenth Circuit:

> Sentencing someone to prison has to be one of the district judge's toughest tasks. So much is at stake for the defendant, the victim, and the community. So much responsibility rests on the judge's shoulders, along with the high expectation that the judge will wisely weigh things that cannot be easily weighed. How much punishment is enough to protect the public? To deter future wrongdoing? To reflect the gravity of the offense? And how much punishment suffices to accomplish all these things without verging on cold revenge or needless retribution? There's rarely a single right answer to hard questions like these. So our system depends, as perhaps it must, on the discretion of thoughtful judges.
>
> One tool district judges have to help them in their unenviable task is the advisory sentencing guidelines. The guidelines seek to supply some sense of what other courts across the country are doing in similar cases and what sentencing experts think may be appropriate. *See* U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1A3.1 (2012); *Rita v. United States*, 551 U.S. 338, 349, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007). Of course, each defendant must be assessed on his or her own terms: courts are not machine presses and sentences are not widgets to be churned out on some criminal justice conveyor belt.

4

For the reasons set forth below, the requested sentence is sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public as required by 18 U.S.C. § 3553(a)(2). Mental health treatment and drug treatment in the community will provide Mr. Faye with effective medical care or other correctional treatment in the most effect manner as directed by 18 U.S.C. § 3553(a)(2)(D).

1. **The Nature and Circumstances of the Offense.**

Mr. Faye pled guilty to possessing three items — two suppressors and a short-barreled shotgun. The sawed-off shotgun is a family heirloom and has been in Mr. Faye's family for many years. Mr. Faye would likely have never been charged with possessing these items had it not been for his communications with Perry. During the investigation of Perry and O'Dell, law enforcement discovered the contact and began investigating Mr. Faye in March of 2023. (PSR at ¶ 23.) Mr. Faye communicated via TikTok with the undercover agents, and he talked with them via TikTok on numerous occasions between May and December of 2023.

On December 14, 2023, Mr. Faye met with an undercover agent at a restaurant in Tennessee, and discussed going to the border on January 20, 2023, to resist the illegal invasion. (*Id.* at ¶ 14.) Undercover agents met with Mr. Faye again on January 11, 2024. Mr. Faye was ill that day, and the agents brought him soup. Mr. Faye gave the agents a suppressor at their request, and the agents gave Mr. Faye $100 for it even though Mr. Faye told them he did not want the money. (*Id.* at ¶ 17.)

5

Then, on February 5, 2024, Mr. Faye was arrested by the ATF for the possession of the suppressor, which was a home-made suppressor fashioned from a fuel filter part. That same day agents executed a search warrant at Mr. Faye's home and found another home-made suppressor and the short-barreled shotgun. (*Id.* at ¶ 19.) After his arrest, Mr. Faye told the agents that he never went to the U.S./Mexico border but believed that "something should be done" to stop the "flow" of illegal immigrants entering the country. (*Id.*)

Mr. Faye recognizes that he has caused serious concern to the government. He recognizes that the firearms offenses that he has pled guilty to are serious and that all federal offenses are serious. That is why he pled guilty and agreed to six felony convictions which will deprive him of his Second Amendment right to bear firearms. Mr. Faye has been a hunter and outdoorsman for his entire life, and this is a significant punishment for him in addition to the time that he has spent incarcerated in the Warren County Jail. As a result, Mr. Faye assures this Court that he has been deterred from ever committing illegal conduct in the future. He has been deterred by the instant prosecution and his incarceration. Additional incarceration is not necessary to deter him or to protect the public.

2. **History and Characteristics of the Defendant.**

Mr. Faye is 55 years old but appears older and is quite feeble for his age. He has no prior criminal record, and he is well-liked by his friends and family. He was raised in Picayune, Mississippi by his father. (*Id.* at ¶ 56.) His mother left the family when he was very young, and his parents divorced. (*Id.*) His mother was an

6

alcoholic. His father remarried and Mr. Faye reports that his stepmother mistreated him. (*Id.* at ¶ 48.)

Mr. Faye was married to Rita Pepper for nearly 20 years, and together they had three children, Tiffany, Joseph, and Paul Faye, Jr. Mr. Faye has 11 grandchildren. Mr. Faye maintains a very close relationship with his family and even though he and Rita are divorced, he maintains a close friendship with her. (*Id.* at ¶ 49.)

Mr. Faye has a good work history, and he is a hard-working man. Mr. Faye has skills in welding, carpentry and landscaping. He has worked in the construction industry much of his life and was maintained his own landscaping and lawn service for about the last five years before his arrest. (*Id.* at ¶¶ 67-67.)

Mr. Faye has dyslexia and has difficulty with reading. He was enrolled in special education courses in school. It appears that he quit school in 1985. (*Id.* at ¶ 63.)

Mr. Faye has long suffered from mental health issues. He was hospitalized for mental health issues in 2016 and diagnosed with anxiety, severe major depressive disorder, gender dysphoria, panic disorder, and prescribed Prozac, Trazadone and Abilify. (*Id.* at ¶ 56.) He was again hospitalized in 2021 and 2022 and diagnosed with bipolar disorder, generalized anxiety disorder, and amphetamine use disorder. (*Id.* at ¶ 57.) Again, he was prescribed medications which included Depakote and Risperdal. (*Id.*) Then, in November 2023, Mr. Faye was hospitalized by his family because he was acting bizarre and delusional. (*Id.* at

¶ 58.) He was diagnosed with bipolar disorder and discharged again with medications. (*Id.*) This was about a month before his meeting with the undercover agent in December 2023 in which he claimed to be a former soldier that served in numerous theatres of combat and could serve as a sniper at the Mexican border to deter the illegal invasion. Clearly, Mr. Faye was not mentally healthy during this time and was making bizarre claims.

Mr. Faye has now been incarcerated since February 5, 2024, and has been described Risperdal while at Warren County. (*Id.* at ¶ 59.) As noted, this time has been very difficult for Mr. Faye, and he is not receiving any mental health therapy even though he needs it. Mr. Faye is keenly interested in and motivated to participate in mental health treatment, and he vows to this Court that he will never attempt to take the law into his own hands or violate the law again.

Mr. Faye's age provides a basis for a downward variance in this case. He is now 55 years old and at an age when the rate of recidivism is quite low. In considering the need for general and specific deterrence at 18 U.S.C. 3553(a)(2), it is relevant to consider the age of the offender because recidivism rates decline dramatically with age. The Sentencing Commission's report on recidivism and age found that "age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, (2017) at 3, available at https://www.ussc.gov

8

[/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf](/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf). Specifically, among offenders released younger than age 21, 67.6% were rearrested and 48.5% were reconvicted after release. However, of those between ages 55 and 59 when released, only about 22% of offenders were rearrested after release and only about 9% of those offenders were reconvicted. *Id.* at 23. Because Mr. Faye is 55 years old and statistically unlikely to reoffend, the requested sentence will protect the public and afford adequate general and specific deterrence as required by 18 U.S.C. § 3553(a)(2)(B) and (C).

3. **Sentencing Guidelines.**

The sentencing guidelines are increased by four levels in the PSR because the suppressors he possessed were not marked with a serial number. (PSR at ¶ 29.) This four-level increase moves Mr. Faye's guideline range from 24-30 months to 37-46 months. Such a significant increase in the advisory guideline range doesn't make much sense in this case, particularly given that the suppressors were homemade silencers converted from commercially available parts. This provides an additional ground to vary to the requested sentence.

4. **Unwarranted Sentencing Disparity.**

A sentence of time-served or approximately the equivalent of 13 months would not produce an unwarranted sentencing disparity in the present case. First, it should be noted that the Sentencing Commission's Interactive Data Analyzer ("IDA") demonstrates that for offenders whose primary guideline is U.S.S.G. § 2K2.1 and who are in criminal history category I, 62.7% of such offenders receive a

9

sentence of below two years of imprisonment. The IDA also shows that for males, aged 41-50, who are U.S. citizens and sentenced for firearms offenses under U.S.S.G. § 2K2.1 received probation in 15.3% of cases. Meanwhile, JSIN demonstrates that in the last five fiscal years, for defendants whose primary guideline was § 2K2.1 and whose final offense level was 21 with a criminal history category of I, 11% of such defendants received a sentence of probation. The average sentence imposed was 27 months and the median sentence was 30 months. These statistics demonstrate that a sentence of time-served, or approximately 13 months, is within the range of sentences imposed across the nation and would not produce an unwarranted sentencing disparity.

4. **Conclusion.**

Mr. Faye looks forward to addressing this Court at the sentencing hearing and presenting evidence and testimony about his release plan. Mr. Faye wants this Court to know that he will abide by the law and take steps to deal with his mental health and drug issues when he is released.

Respectfully submitted,

s/ *R. David Baker*
R. DAVID BAKER
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047
David_baker@fd.org

Attorney for Paul Faye, Sr.

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2024, I electronically filed the foregoing *Paul Faye's Statement Regarding 3553(a) Factors* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Joshua Kurtzman, Assistant U.S. Attorney, 719 Church Street, Suite 3300, Nashville, TN, 37203; copy to LaShonda Dancy, U.S. Probation Officer, 719 Church St., Suite 1100, Nashville, TN 37203.

                                                s/ *R. David Baker*
                                                R. DAVID BAKER